IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY HARLEY, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-3559 (JBS) |
| v. | |
| HENRY M. PAULSON, JR., | **OPINION** |
| Defendant. | |

Michelle J. Douglass, Esq.
THE DOUGLASS LAW FIRM, L.L.C.
1601 Tilton Road
Suite 6
Northfield, NJ 08225
    Counsel for Plaintiff Jeffrey Harley

David Edward Dauenheimer, Trial Attorney
OFFICE OF THE UNITED STATES ATTORNEY
970 Broad Street
Newark, NJ 07102
        -and-
Paul A. Blaine, Trial Attorney
OFFICE OF THE UNITED STATES ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
    Counsel for Defendant Henry M. Paulson, Jr.

**SIMANDLE**, District Judge:

    This matter comes before the Court on a motion to dismiss or, in the alternative, a motion for summary judgment by Defendant Henry M. Paulson, Jr., the United States Secretary of Treasury, ("Defendant"), against Plaintiff Jeffrey Harley ("Plaintiff"), an employee of the Internal Revenue Service ("IRS") [Docket Item 7].  Plaintiff has brought suit under Title VII of the Civil Rights Act of 1964, as well as the New Jersey

Law Against Discrimination, the First Amendment of the federal constitution, and the New Jersey Constitution.  He alleges that his supervisors at the IRS discriminated against him because he is African-American and retaliated against him for bringing a previous civil suit along with several other complaints to the Equal Employment Opportunity Commission ("EEOC").  The Court, for the reasons discussed below, will grant Defendant's motion to dismiss as to all Plaintiff's claims other than those under Title VII, but deny summary judgment on Plaintiff's Title VII claims as premature.

I.   **BACKGROUND**

This is not the first time Plaintiff has appeared before this Court.  His first suit against Defendant, also alleging racial discrimination and retaliation, settled in October, 1996.  (Compl. ¶ 3.)  That initial suit arose from Plaintiff's mistreatment by his supervisor, Edward Mastran, who allegedly unfairly evaluated Plaintiff and told another co-worker "that blacks and females do not make good special agents because they don't think logically."  (Id.)  Since this first settlement, it appears that Plaintiff has filed at least five EEO complaints against his supervisors at the IRS, alleging either racial discrimination or retaliation.  (Id. ¶¶ 10, 15, 16, 17.)  Plaintiff's difficulties at issue in this claim allegedly began in November, 1996, when the IRS promoted Plaintiff to a GS-11

Investigative Analyst position, in accordance with the settlement agreement.  (Id. ¶ 4.)

Plaintiff's present complaint sets forth the following instances of alleged racial discrimination and retaliation as the basis for his suit: in November, 1996, the Chief of the Criminal Investigation Division, Paul Machalek, decided that Plaintiff's G-11 position had no promotion potential, (id. ¶¶ 4-6.); Mr. Machalek and others delayed promoting Plaintiff until February, 2006, (id. ¶¶ 9, 18.); after the settlement of his first suit in 1996, the IRS placed Plaintiff at their Cherry Hill, New Jersey office, where many of Mr. Mastran's "supporters" worked, (id. ¶ 8.); Plaintiff's Cherry Hill co-workers "shunned and ignored him" and "stared down or glared" at him, but when he complained his supervisor did nothing, (id.); Plaintiff's direct supervisor, Leo Blanes, unfairly and inaccurately evaluated his work, while a white co-worker with less experience received higher evaluations than Plaintiff, (id. ¶¶ 11, 15-17.); in 2002, after Plaintiff complained about an evaluation, Mr. Blanes restricted Plaintiff's use of his personal vehicle while others were permitted to use their own vehicles, (id. ¶ 13-14.); after Plaintiff filed an EEO complaint against Mr. Blanes in November 2002, Mr. Blanes submitted a lower evaluation of Plaintiff in 2003, (id. ¶ 15.); and finally, the IRS has refused to accommodate an injury to Plaintiff's back by offering him a position closer to his home,

and instead offered him a demotion and reporting him to the Treasury Inspector General for Tax Administration, (Id. ¶ 18-19.).

On July 31, 2007, Plaintiff filed his complaint in this matter. Counts I and II are claims under the New Jersey Law Against Discrimination, Count III is Plaintiff's First Amendment claim, Count IV is brought under the New Jersey Constitution, and Count V is a Title VII claim. On March 27, 2008, Defendants submitted the instant motion to dismiss or, in the alternative, motion for summary judgment, in lieu of an answer to Plaintiff's complaint. Discovery has not commenced in this action.

In his motion, Defendant first argues that the Court only has jurisdiction over Plaintiff's Title VII claims. He further argues that Plaintiff cannot establish a prima facie case for discrimination or retaliation under Title VII, and that even if true, Plaintiff cannot show that Defendant's proffered neutral reasons for the IRS actions were pretextual.

## II.   DISCUSSION

### A.   Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 127 S. Ct. at 1965 n.3.]  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.

Phillips, 515 F.3d at 234. "Generally, in ruling on a motion to dismiss, a district court relies [only] on the complaint, attached exhibits, and matters of public record." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).

### 1.   Claims Other Than Title VII

Defendant argues, and Plaintiff concedes, that Congress has designated Title VII as the sole statutory remedy for federal employees who wish to pursue employment discrimination and retaliation claims against their employer.[1]  The Court agrees, Owens v. United States, 822 F.2d 408, 409-10 (3d Cir. 1987), and will dismiss counts I through IV of Plaintiff's complaint.

### 2.   Title VII Racial Discrimination

Defendant argues that dismissal is warranted because Plaintiff cannot establish a prima facie case of race discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2]  However, to plead a claim of discrimination

---

[1] Plaintiff's First Amendment claim alleges retaliation for filing EEO complaints and for opposing discrimination made illegal under Title VII through civil suit and speech to his superiors.  (Compl. ¶¶ 33-36.)  As a result, his First Amendment claim is fully encompassed by Title VII, which "protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')" from retaliation.  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).

[2] In McDonnell Douglas, the Supreme Court set out the elements necessary to establish a prima facie case for Title VII discrimination based on the failure to promote, absent direct evidence of discrimination.  411 U.S. at 802.  Under that

6

under Title VII, a Plaintiff need not establish a prima facie case under McDonnell Douglas.  See Fed. R. Civ. P. 8(a)(2) (requiring that complaints contain a "short and plain statement showing that the pleader is entitled to relief"); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) ("The prima facie case under McDonnell Douglas, . . . is an evidentiary standard, not a pleading requirement."), abrogated on other grounds by Twombly, 127 S. Ct. at 1968-69; Storey v. Burns Int'l Sec. Serv., 390 F.3d 760, 764 (3d Cir. 2004).  The Supreme Court found this particularly appropriate "because the McDonnell Douglas framework does not apply in every employment discrimination case." Swierkiewicz, 534 U.S. at 511.  "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."  Id. Therefore, to state a claim for discrimination under Title VII, a plaintiff must allege that, as a result of his protected status, he suffered an adverse employment action "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  Storey, 390 F.3d at 764.

---

framework, a plaintiff must first prove a prima facie case of discrimination by establishing four factors: (1) that she is a member of a protected class; (2) that she applied and was qualified for a position for which the employer was seeking applications; (3) that she was rejected despite having adequate qualifications; and (4) that after she was rejected, the employer filled the position by selecting someone of lesser or equivalent qualifications who was not a member of the plaintiff's protected class.  See id. at 802.

In the present case, applying the liberal pleading standard dictated by Twombly, Plaintiff has alleged sufficient facts to suggest that Defendant subjected him to adverse employment action because of his race, which raise the prospect of relief beyond a speculative level. Phillips, 515 F.3d at 234. Plaintiff has alleged, inter alia, that because he is African American his IRS supervisors delayed his promotion until 2006[3] and denied him a temporary transfer while injured. (Compl. ¶¶ 9, 18-19.). Several courts within this circuit have suggested that a delay in promotion without the appropriate retroactive pay may amount to an adverse employment action, and the Court finds this logic persuasive. See Coefield v. GPU, 125 F. App'x 445, 449 (3d Cir. 2005); Johnson v. Bath Saver, Inc., No. 06-5018, 2008 WL 656037, at *7 (D.N.J. 2008); see also Storey, 390 F.3d at 764 (adverse employment action includes action serious enough to "alter an employee's compensation, terms, conditions, or privileges of employment."). The Court finds that Plaintiff's allegations that Defendant delayed promoting him until 2006 and refused to

---

[3] Plaintiff, in his brief, articulates this as a failure to promote claim, but since Plaintiff was ultimately promoted in 2006, the injury which Plaintiff asserts is the delay in his promotion. (Pl. Br. Opp'n at 33.) Defendant argues that Plaintiff did not raise this delay in promotion claim in his complaint. (Def. Reply at 8.) However, Plaintiff specifically alleges that "[Mr.] Machalek was responsible for Plaintiff's exposure to a hostile work environment, exercise of influence to prepare unfair evaluations and holding back on issuing promotion to increased grade levels." (Compl. ¶ 9.)

8

adequately accommodate his back injury by permitting a temporary transfer, if taken as true, are sufficient to suggest that he suffered an adverse employment action altering his compensation, terms, conditions, or privileges of employment.[4]  See Phillips, 515 F.3d at 234; Storey, 390 F.3d at 764; see also Seldon v. National R.R. Passenger Corp., 452 F. Supp. 2d 604, 609 (E.D. Pa. 2006) (allegation that employer refused to allow employee to work from home was sufficient to survive a motion to dismiss).

    Furthermore, Plaintiff has alleged sufficient facts to suggest that he suffered this adverse employment action because of his race.  Plaintiff alleges that his white co-worker, who was less-qualified than Plaintiff (the Court infers from the fact that Plaintiff helped to train her), received higher evaluations than Plaintiff, despite Plaintiff's "high quality work performance."  (Compl. ¶ 16.)  This fact, along with Plaintiff's other allegations of unfair treatment, are enough to raise a plausible claim for relief under Title VII.  The Court does not, and cannot, make any assessment as to the likelihood of ultimate success of such a claim.  Phillips, 515 F.3d at 234 ("Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable'").

---

[4] The Court will not, at this stage, decide whether Plaintiff's other allegations of employer conduct might be adverse within the meaning of Title VII.

        3.   <u>Title VII Retaliation</u>

Defendant similarly argues that Plaintiff cannot state a claim for retaliation under Title VII, because he cannot show that Defendant took adverse employment action against him in retaliation for his civil discrimination suit or his multiple EEO complaints.  The elements of a Title VII retaliation claim are: "(1) [plaintiff] engaged in a protected activity under Title VII; (2) the employer took an adverse action against [plaintiff]; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action."  <u>Wilkerson v. New Media Tech. Charter Sch. Inc.</u>, 522 F.3d 315, 320 (3d Cir. 2008).  However, the ordinary liberal pleading rules apply.  <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 511 (holding that "the ordinary rules for assessing the sufficiency of a complaint apply" to Title VII claims).

Defendant does not suggest that Plaintiff's civil suit or EEO complaints are not protected activity, <u>see</u> <u>Sarullo v. U.S. Postal Service</u>, 352 F.3d 789, 800 (3d Cir. 2003) (filing EEO complaint is protected activity), nor does he argue that the Court should dismiss Plaintiff's complaint at this early stage because Plaintiff cannot show a causal relationship between Plaintiff's complaints and the alleged consequences.  Rather, Defendant argues that Plaintiff has not sufficiently alleged the adverse action.  For the purposes of a retaliation action,

"materially adverse" actions are those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal citations omitted); Moore v. City of Philadelphia, 461 F.3d 331, 346 (3d Cir. 2006).  The ultimate determination requires an analysis of the "totality of the circumstances" and thus the fact-finder "must concentrate not on individual incidents, but on the overall scenario."  Moore, 461 F.3d at 346.

   The Court cannot find that, as a matter of law, Plaintiff has failed to allege facts which suggest that Defendant's actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  See id.  Plaintiff alleges that after he settled his first suit alleging racial discrimination, the IRS placed him in an office with supporters of his allegedly racist former supervisor and told him he had no promotion potential, (Compl. ¶ 4-6, 8.); that when he complained about his new co-workers' hostile behavior, his supervisors did nothing, (id. ¶ 8.); that after Plaintiff brought one complaint against Mr. Blanes, Mr. Blanes restricted Plaintiff's use of his personal vehicle while others were permitted to use their own vehicles, (id. ¶ 13-14.); that after he filed his November 2002 EEO complaint, Mr. Blanes lowered his evaluation, (id. ¶ 15.); and that rather than permit him to maintain his rank and work

closer to home due to his back injury, the IRS offered him a demotion and reported him for possible fraud, (id. ¶¶ 18-19.); and finally, that the IRS unfairly delayed his promotion in retaliation for his numerous EEO complaints and prior civil suit, (id. 9, 18.).  Taken together, these bare facts, consistent with our notice pleading standard, are sufficient to place Defendant on notice of the basis for Plaintiff's retaliation claim and to suggest that the circumstances of these actions might lead a reasonable person to refrain from bringing a complaint. Phillips, 515 F.3d at 234; Moore, 461 F.3d at 346.  The Court finds that Plaintiff's allegations of retaliation are sufficient to state a claim for which relief may be granted under Title VII.

**B.   Summary Judgment**

Though Defendant styles his motion as a motion to dismiss, with summary judgment only as an alternative, it is clear from the nature of Defendant's arguments and the cases Defendant cites that the meat of Defendant's motion is the position that there remain no material facts in dispute.  In particular, Defendant argues that even if Plaintiff can establish a prima facie case for discrimination or retaliation, he cannot show that Defendant's non-discriminatory, non-retaliatory reasons for the IRS actions are, in fact, pretextual.[5]  (Def. Br. at 16-20, 21-

---

[5] For the purposes of summary judgment, once a plaintiff has established a prima facie Title VII case of discrimination or retaliation and the defendant has offer a non-retaliatory, non-

22.)  The Court cannot conclude, at this stage in litigation, where Defendant has not answered Plaintiff's complaint and no discovery has occurred, that there are no genuine issues as to any material facts.

"[B]y its very nature, the summary judgment process presupposes the existence of an adequate record."  Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007).  Rule 56(c) provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  As the Supreme Court has explained, "Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

discriminatory reason for the employment action, the burden returns to the plaintiff.  Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995).
> [A plaintiff] may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

Waldron, 56 F.3d at 495 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)); Moore, 461 F.3d at 342 (noting that the McDonnell Douglass burden-shifting approach applies to retaliation claims as well).

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis added).  Therefore, "[i]f discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion."  Abington Friends, 480 F.3d at 257 (citing Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845-46 (3d Cir. 1992)).[6]

In Plaintiff's racial discrimination claim there remain material questions of fact that would merit from at least some discovery, as this evidence is possessed by Defendant.  Miller, 977 F.2d at 845 ("where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (internal citations omitted).  At a minimum, Plaintiff deserves an opportunity to seek direct evidence, however difficult to procure, that his IRS supervisors delayed his promotion and refused his temporary transfer because of racial prejudice.[7]  See

---

[6] Though if a non-moving party believes that additional discovery is necessary, the proper course is generally to file a motion pursuant to Rule 56(f), Fed. R. Civ. P., Abington Friends, 480 F.3d at 257, Plaintiff has sufficiently argued his need for further discovery in his opposition to summary judgment, especially because there has been no discovery at all in this action.

[7] Plaintiff has so requested:
> The GS-12 position was denied to the Plaintiff for a three (3) year period, at minimum.  Plaintiff deserves the opportunity to explore this point by way of discovery, including interrogatories, document production, and depositions.  At this stage, however, it is clear that there are fact

Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008) ("Disparate treatment discrimination is proven by either using direct evidence of intent to discriminate or using indirect evidence from which a court could infer intent to discriminate.") Furthermore, as Defendant argues strenuously that all IRS employment-related actions taken towards Plaintiff were not based on race, Plaintiff must be given an opportunity to seek contradictory evidence in Defendant's possession. See Miller, 977 F.2d at 845 (holding in a Title VII discrimination case where the individual defendants responsible for promotion decisions had not been deposed, "the incomplete state of discovery alone should have precluded summary judgment on the merits").

Similarly, there are material questions of fact as to Plaintiff's claim of retaliation.  In particular, there is dispute as to whether there is a causal connection between Plaintiff's first civil complaint and EEO discrimination and retaliation claims and his supervisors' alleged abusive conduct. Plaintiff is further warranted discovery to rebut Defendant's proffered neutral reasons for his supervisors' conduct.  See Miller, 977 F.2d at 845.  For these reasons, summary judgment on Plaintiff's Title VII claims would be premature.  See Celotex, 477 U.S. at 322.

---

questions regarding the real reason(s) Plaintiff was not promoted to the GS-12 promotion. (Pl. Br. Opp'n at 33.)

15

**III. CONCLUSION**

    For the reasons set forth above, the Court will grant Defendant's motion to dismiss Plaintiff's New Jersey Law Against Discrimination, First Amendment, and New Jersey Constitution claims, but deny summary judgment on Plaintiff's Title VII claims as premature. The accompanying Order will be entered.

**December 9, 2008**                     **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge